CHARLES A. REDD, trustee, *et al.*, plaintiffs in error, *vs·* HENRY S. DAVIS, defendant in error.

1. In a civil case founded on contract, transferred by the constitution to the superior court, in consequence of the abolition of the county court, it was competent for the superior court to render judgment, in November, 1868, without a jury, no issuable defense being filed on oath.

2. A judgment against an executor on a debt of the testator, though not expressed to be *de bonis testatoris*, is amendable ; and even without amendment, it may, where the executor is a non-resident of the state and insolvent, and where there were no assets undistributed at the time it was rendered, be the basis of a bill in equity by the creditor against devisees to reach assets distributed to them before the judgment was rendered, the executor himself being one of the devisees and a party defendant to the bill.

3. The legal title to a devise sought to be affected being in a trustee for the benefit of minors, etc , and the trustee being one of the original defendants to the bill, the judgment did not become dormant pending the bill as to any of the beneficiaries of the trust.

4. Where the complainant's demand against the testator has been reduced to judgment against the executor after distribution, on suit brought before the debt was barred, assets distributed to and still in the hands of devisees, are not protected by lapse of time or by the statute of limitations, so long as the judgment is in full force.

5. Specific devises are liable to creditors, if creditors cannot otherwise obtain satisfaction. Where the executor, as devisee, has an interest in the specific devise, if he has committed waste or mal-administration to the prejudice of his co-devisees, his share in the devise should first be applied to the debt ; but the co-devisees may also be brought before the court as parties, so that contribution may be had from them, if justice requires it. By decree, the equities of each and all can be ascertained, defined and protected.

Constitutional law. Judgments. Amendments. Administrators and executors. Statute of Limitations. Equity. Debtor and creditor. Contirbution. Before Judge Crawford. Muscogee Superior Court. May Term, 1876.

Davis filed his bill against Hampton S. Smith, trustee, and others, legatees under the will of Hudson A. Thornton, to subject certain property which the executor of testator had turned over to them, to the payment of a judgment subsequently obtained by him against such executor.

To this bill the defendants filed separate demurrers. The demurrers were overruled, and defendants excepted.

Whilst the case was pending in this court, Smith died, and Redd was made a party in his stead.

All the material facts are stated in the opinion.

THORNTON & GRIMES; R. J. MOSES, for plaintiffs in error

PEABODY & BRANNON; JAMES JOHNSON, for defendant.

BLECKLEY, Judge.

The decision complained of was the overruling of the defendants' several demurrers to complainant's bill for want of equity. In the argument here, various points were made. Such of them as seem grave enough to merit specific notice will be disposed of in due order.

1. The judgment against the executor is said to be void because rendered without a jury. The action was a civil case founded on contract. The suit was commenced in January, 1868, in the county court, which court was abolished by the constitution that took effect on July 21st, of that year. Code, §5128. The unfinished business of the defunct court was transferred to the superior court, and power was conferred on the latter to complete it. *Ib.*, §5149. The judgment was rendered without a jury because no issuable defense was filed on oath. *Ib.*, §5091. We see no good reason why the provision of the constitution dispensing with a jury should not apply to cases which were carried into the superior court by the constitution itself, or even to those which were there before. The provision interfered with no judgment, or vested right. It related to the remedy alone, and regulated trial—nothing else. It did not deprive the defendant of jury trial, but prescribed a condition to obtain it with which he could comply or not, at his option. 5 *Ga.*, 195. Pending cases come under the designation, " all cases," and these are the words employed. Why should a difference be made in the mode of trial, founded on noth-

Redd, trustee, *et al.*, *vs.* Davis.

ing but the time of instituting the suit? In 4 *Ga.*, 208, quite a different question was presented. So too in 57 *Ga.*, 322, 354, where it was decided that appeals to a special jury, entered before the adoption of the constitution, were not embraced in the provision. As to appeal cases, the constitution was not retroactive. It prohibited any more appeals, in express terms, but it did not abrogate those which had been already entered. The law under which they were entered, declared expressly that they should be tried by a special jury. Cobb's Dig., 494; Code of 1863, §3551. It was for the sake of such a trial that they were entered, and on the faith of having it, the sureties became bound for the eventual condemnation money. To deny to them such a trial as their contract contemplated, because their principals might fail or refuse to comply with new conditions as to pleading, would be to introduce new terms into their contract. To hold that the constitution of 1868, denied to the surety on appeal the right to have the eventual condemnation money ascertained by a jury, would be to hold that it intended to discharge him by obliterating the appeal, or else that it intended to force him to incur the new risk of having both debt and damages measured by the judge, on the plaintiff's evidence alone. Either of these consequences would be too extreme to be accepted without being forced upon the understanding by language too plain to admit of the slightest doubt. But where no appeal, and no security on appeal, and no prior judgment are involved, we are unable to discover any ground for distinguishing, in the mode of trial, between cases already pending in the superior court, and those not yet brought, when the constitution was adopted. The engagement of a surety on appeal was to answer for the result of another trial. To deny a full trial upon issuable pleas that were in when the appeal was taken, would be to interfere with the very matter touching which the contract was made. The contract related to trial and the results of trial. 38 *Ga.*, 224. The appeal was not to the judge but to a special jury.

Redd, trustee, *et al.*, *vs.* Davis.

2. The judgment was rendered in a suit against an executor, founded upon a note given by the testator in his lifetime. The object of the present bill, the complainant being the plaintiff in that judgment, is to reach assets in the hands of devisees, which were administered by the executor before the judgment was rendered. It is objected that the judgment is simply against the defendant in the action, and not *de bonis testatoris.* This is its character, as appears from an exhibit annexed to the bill; but it is amendable. 57 *Ga.*, 136, and cases cited. That it is amendable would not, however, in an ordinary case, entitle the complainant to preceed in equity without stopping to have it amended. *Lemon vs. Thaxton*, August term, 1877. The general rule is, that a creditor must collect at law, and in the effort to do so, must pursue the executor or administrator as far as legal remedies will extend; not only, it may be, as far as they will extend against the unadministered estate, which may remain in specie, but also against the representative of the estate, personally, if he has committed waste. A devise, legacy or distributive share, when duly administered before any lien upon the same has been established, is not to be followed by creditors without necessity. But, according to the allegations of the bill, the creditor in the present case has no resource which he can possibly make available for the collection of his debt, except to follow after the devised estate. The executor is a non-resident of this state, and insolvent. He is not under bond. There is no security to account to creditors for his mal-administration. In this condition of things, equity need not drive the complainant back into a court of law to have the judgment amended, and to procure an execution that must needs be returned *nulla bona.* Such a return could not well be followed by a suit against the executor for a *devastavit*, because he is beyond the jurisdiction. The creditor will not be constrained to pursue him beyond seas, that is, the boundaries of the state. Moreover, he is insolvent, and to run him down would be to catch nothing but a man. According to the charges of the bill, there were no assets of

the estate in his hands, undistributed, when the judgment was rendered, and he was insolvent then as well as now. As to his interest, as one of the devisees in remainder, in the property now sought to be subjected in equity, that can be better dealt with by means of this bill, than it could be at law by process of attachment. If he is truly insolvent, as the bill alleges, this interest might at law be as subject to his own personal creditors as to this creditor. His co-devisees are interested in holding them off; and if it can be done at all, it can be done in equity, and probably there only, unless by the rule of the Code, which allows a court of law to administer equitable principles and afford equitable relief, on proper pleadings for the purpose. This rule, however, does not oblige equity to let go, in order that a court of law may take hold. Code, §§3095, 3096. A still better reason in favor of equity jurisdiction is, that the devised property is held, under the will, by a trustee, who is directed to make sale thereof at the time appointed, and divide the proceeds. The legal title is in the trustee as yet, the trust not being fully executed.

3. The rendition of the judgment was as far back as November, 1868, and the bill was filed in October, 1873. The devise in question embraced certain store-houses and lots in the city of Columbus, and was made to a trustee, in trust for the support and education of the testator's grandchildren, the holding for this purpose to continue for the term of twenty years (the testator died in 1859), and then the property to be, by the trustee, sold, and one-half of the proceeds paid over to the testator's son (the executor of the will); and the other half to be invested by the trustee, and managed during the life of the testator's daughter, the income to be applied to her support and the support of her children, and, at her death, the *corpus* to be equally divided among said children. The trustee, together with the executor and his sister, the son and daughter of the testator, was made a party defendant to the bill when it was filed, but the grandchildren of the testator were not then parties, and

did not become so until introduced by an amendment to the bill in December, 1875.   From the dates here given, it will be apparent, that, while seven years from the rendition of the judgment had not elapsed when the bill was filed, they had been more than completed when the grandchildren were brought in as parties.   On this ground, it is contended that the judgment is dormant:  Code, §2914.   But the sole defendant to the judgment is the executor, and if it is not dormant as to him, it is difficult to see how it can be dormant as to anybody else.   How would you revive it ?   Litigation based on a judgment, in whole or in part, and affecting all the parties to the judgment as parties to the litigation also, has been often held to prevent dormancy—so often, that it is needless to cite the cases.   A further reason why the judgment is not dormant as to any of the beneficiaries of the trust, is, that the legal title to the trust property is in him, and he has been a party to the bill from the beginning. In him the trust estate was fully represented before the court.   It is even doubtful whether it was necessary to make the grandchildren parties, to prepare the cause for a final decree: 16 *Ga.*, 119.   Moreover, were the judgment, in fact dormant, it would still be evidence of a debt, so long as a proceeding to revive it would not be barred :  Code, §2914 ; 7 *Ga.*, 393 ; 8 *Ib.*, 351 ; 21 *Ib.*, 507 ; 22 *Ib.*, 53.

4.  The length of time which has elapse since the executor assented to the devise, and the trustee entered into possession, is urged as a defense to the bill upon the principle of prescription, or the statute of limitations, and also upon the more special principle of stale demand.   The judgment is founded upon a promissory note, which was put in suit against the executor before any statutory bar had intervened ; and, as we have seen above, the judgment still retains all its original vitality.   The title of the trustee, though supported by continuous possession, which commenced before the judgment was rendered, has been all the while qualified by law with a contingent liability in equity for the payment of this debt :. Code, §§2467, 3152.   Viewing this liability as

adhering to a subsisting trust, it is not within the ordinary statutes of limitation : *Ib.*, §3196. Viewing it as the correlative of a statutory right, or of a right accruing by operation of law, the period of limitation is twenty years : *Ib.*, §2916. Viewing it as affecting the holder of lands by actual adverse possession, without more, the period is the same : *Ib.*, 2682. We think it would be more reasonable to class it under any of these provisions, than under section 2683 of the Code, which declares that adverse possession of lands, under written evidence of title, for seven years, shall give title by prescription.   It is true that a devisee holds under written evidence of title, to-wit : the will ; but a part of the law applicable to the will is, that the title which it conveys is not absolute and unconditional in equity, as against creditors of the intestate, until their claims are extinguished.   This being the law of the land, it has the same effect as if it were written on the face of every will.   The holding of the devisee is, therefore, in every case, consistent with the creditor's equitable right, and, relatively thereto, not strictly an adverse possession, so long as the will must be produced in aid or support of it.   As to the doctrine of stale demands, any discussion based on the facts of this case would be useless : Code, §§2924, 3094, 3196.

5. It is contended, finally, that this devise is protected because specific ; but, according to the bill, nothing else is within the creditor's reach.   All the rest of the estate is gone, and those taking, under the will, general legacies and the *residuum* are precisely the same persons who are interested in this devise.   They are now all before the court, and their respective equities, *inter sese,* may be adjusted.   Of course, if the executor has committed waste, his interest in the devise should be first appropriated by the decree to the debt.   The other defendants can be made to contribute if necessary, and complete justice be done.

Cited by counsel for plaintiffs in error : (judgment without jury), Code, §5091; 57 *Ga.*, 322; (county court), Code, §§5128, 5149 ; (judgment *de bonis testatoris,* etc.), 51 *Ga.*, 457 ; 52

*Ib.*, 35, 585 ; 53 *Ib.*, 387; 54 *Ib.*, 501; 7 *Ib.*, 31; 57 *Ib.* 148; (following assets), Roper on Leg., 843, 844; W'ms on Ex'rs., 1687, 1776 *et seq.*

Cited by counsel for defendant in error : (following assets), Code §3152; 55 *Ga.*, 11; 8 *Ib.*, 43, 106, 460; 20 *Ib.*, 145; 6 *Ib.*, 102.

Judgment affirmed.